I think what would be most helpful is some chronology of how we got ourselves in this position almost 20 years later. I'd like to say the case is 20 years old, but it only goes back to 1988. The initial charges were filed in 1989. The initial charges in this case were filed in 1989. And the General Counsel's Office took two years before issuing a complaint. I'm not faulting them on that, because these issues were undecided at that time in terms of this work jurisdiction. It took them time, I'm sure, to sort all this out. The trial in this case began in 1992 and went on during the spring of 1992 and effectively recessed for a couple years, in part because a lot of it was settled out and, in part, there were some subpoena issues, and resumed in 1994. The administrative law judge issued his decision dismissing all the remaining claims in the case, saying there was no merit to them because board law didn't support them, in 1995. In late 1995, all this kind of got sorted out when the Labor Board issued the famous California saw and knife case that set out what the standards were. And none of us practicing labor law knew exactly what the result would be, and we all were kind of waiting. So very promptly in 1996, the International Union, the UFCW, took action and began publishing an appropriate notice in its international magazine, which was mailed to everybody. And just a little background. The machinists, which were involved in California saw and knife, had always published the notice because they knew what the rules were under the Railway Labor Act, which required that notice. What was left open was whether the national labor law. So the UFCW adopts the same strategy. It will publish a notice in our magazine. So from 1996 on, that notice goes out virtually to everybody who's a member of Local 1036. Sorry, 1096. So the board remands Judge Pannier's dismissal, saying we've decided California saw and knife. Now you re-decide this case in light of these clearly expressed or these expressed standards. Remands in 1996. Judge Pannier is fairly prompt. In early 1997, issues a new decision finding a number of violations based upon California saw and knife. Everybody files exceptions again, in part because nobody knew whether California saw and knife was going to be enforced, and it was enforced in part shortly thereafter by the Seventh Circuit. So the board waits until 1999 to decide this case because there is another very difficult, important issue in it involving organizing expenses. But I want to stop there and say that my client didn't kind of sit back and say, well, just wait. Not only was the notice, the Beck General Motors notice, given in 1996, in 1997, we began writing the board saying, what else do you want us to do? We've given this notice. Is it adequate? Because we don't want to be left in, you know, for years waiting for the board to tell us whether it's right or wrong, because there's obviously some liability here. You're not arguing there's some sort of statute of limitations, are you? No. You're just arguing it's a difficult case and it took a little bit of time. No statute of limitations. The board has historically taken a long time to decide these cases, and that's we all know. And so we take immediate action by not only the International Post giving people the Beck General Motors notice, but I then start writing Region 16 in Texas, which is responsible for this case. It's all in the supplemental excerpts we're saying, is our notice adequate? Are we doing what you want us to do? We just want to know so that we're not caught a few years later having to redo things with some monetary liability. And they just refuse to answer us, although at one point the compliance officer says, I'll give you an answer, and then he decides they won't give us an answer. So every year after, the International gives us notice. So we go back to 1999. Board decides the underlying important issue of chargeable expenses for organizing, and that case is then petition for review is filed in this court, which the panel decides it isn't, goes to an en banc panel. In 2001, we get the en banc decision. And again, I'm not faulting anybody because there were important issues here. But meanwhile, we're kind of left, have we given an appropriate Beck General Motors notice? Every year we ask. And so the case is then remanded back to the board in 2002 to resolve compliance issues for my client only because everything else is effectively resolved. And it takes them until 2004 to finally say to the parties, okay, what do we do on remand? We all file statements of position. And then they issue the decision in this case in 2005 saying, we're going to change the notice, and we start to argue about whether we've And the board waits two more years before it files this petition for enforcement in this court, which is where we're here. And really the focus of my case is to say, for ten years we've done what we were told we had to do in California saw and knife. And for ten years I've asked you, MLRB, is that notice adequate? Because the board's order requires us to give that notice again to everybody. And we say we've done it for ten years, we shouldn't have to do it again. Now, what exactly is it that you want from us? There's one specific provision in the board's order that says that we have to, again, give written notice to everybody who's currently in court. This is- Welcoming letter. Pardon? Everyone who got the welcoming letter. No, the welcoming letter, that's a totally different issue. I'm sorry? That's a totally different issue, the welcoming letter. Part of the board's order, there were two issues in this case. One, the welcoming letter, and I've confessed there when I argued this case to the panel in 91, I argued it en banc, I said that letter was bad, we understand it. That's a very separate issue. What's at stake in this is whether we have to give notice to the 10 or 15,000 people currently employed in the bargain unit again of their Beck and General Motors rights. And that, that order is in my excerpt of the record. It's at page 199, where the board says we have to take the following affirmative action. It's page 199 at the bottom of the left-hand side. Notify all bargain unit employees in writing of their rights under General Motors to be and remain non-members and the rights of non-members under Beck and so on. And we just say we've done this for ten years, or at least we've asked you whether we've done it for ten years. We don't want to have to do it again directly to them because we keep doing it and we've done it. So what do you want us to do? To enforce the board's order except as to paragraph 2A, deny enforcement of that on the grounds we've already done it, or at least they won't tell us we haven't done it. That's paragraph 2A of the board's order at page 199. Why isn't that something that's taken up as part of compliance? And you say you've already complied, you've done it, so it's not a question of enforcing. You say you've satisfied it already. Well, because for ten years we've asked the board, have we complied, and they won't tell us. So although theoretically you could tell us, union, you can raise that in compliance, let the board decide it. The problem is, why should we have to litigate that when for ten years we've said to the board, have we complied with your order? Because this is, have we complied with the rule that we give back in General Motors notice? So because you haven't had an answer from the agency, you want us to step in and answer it instead. Well, in part because the record, the supplemental excerpt, shows that we have, in fact, fully complied and given the notice for the last ten years. Well, now, I mean, from 96 to 2005, when the supplemental excerpt stops. Well, it's easy to understand why you'd like to have that answer, but isn't it a proposition we're supposed to, aren't we supposed to wait for the agency to speak before we decide to speak for them? Well, that's sort of their position in their brief. They're saying that they haven't had compliance proceedings. But when, Your Honor, when you talk about the agency speaking here, the board itself as an agency can't speak because there's no case before them. It's the general counsel who has to say that. That's why I'm having trouble understanding why we're here.  And so they're going to say you shouldn't have to notify the bargaining employees. You're saying we've done that already. We've checked off that box. Well, but once there's a court order that says notify them, the board is then going to be bound, I think, by this court's order that says you've got to notify them, so send them another letter, which is what we don't want to have to do. And that's a terrible expense. It also is disruptive. It also disrupts what we think has been our compliance with the law and good-faith effort to comply over the years by giving that notice, as the board said we had to do it in California saw and knife. So the problem is that if the board's order said notify all bargaining unit members in writing to the extent you haven't already done it, I don't think I'd be nervous. But it says notify, not notify to the extent you haven't. Well, that's not the only place where they use the present tense. I mean, for each accounting period, provide Hilton and NOSIC with information. I mean, there are lots of things that my impression is from, I have to say, this is a, I come into this, the back end of the case, it's got all these years of history. It took me a while to figure out the question that was just posed. What exactly is the fight now? And I realized, like, 85 percent of the stuff I read, that's all past history. It doesn't matter. That's fine. I take that. But it seems to me there's really not a dispute as to whether things that have been already accomplished have to be done again. I'll hear from NLRB, but at least so far as I read their submission, they're not trying to say, okay, we start with a clean slate after the court renders its decision, and even if you've done it before, you've got to do it again. Maybe that will turn out to be their position, in which case we've got a different case. But I read it to say, well, that's all part of compliance. And so they're not going to say just because it was done in 2005 instead of 2010 that it doesn't count. Well, we narrowed our issues considerably in our reply brief by conceding that counsel had conceded some of our points and explained we'd have certain rights, but he's never – I don't think the counsel for general counsel has ever conceded that we don't have to mail that notice again if we've done it. If their brief had expressly said, yeah, we agree. If you can show us we've mailed an adequate notice, you don't have to mail it again. I think I'd be in a far more difficult position to ask this Court to decide we've mailed the notice, but they've never expressly said that. Just as we've also raised sort of a separate issue, which is paragraph H, which is on page 200, requires us to sign and mail notices of the board's order. It's a different issue of the whole notice. And initially, we didn't object to posting the notice in the stores. We still don't object. We understand that's a traditional board remedy. But at this point, 10 years now have passed, and we keep sending every employee their Beck and General Motors rights. They've had it. So now we're saying 10 years later, why should we have to mail the board's notice to everybody in the bargaining unit when we've, for 10 years, done what we're supposed to? So those are kind of the two fundamental things that we're concerned about. And let me just take off on the other sort of sideshow of this that we're still objecting to, which goes back to the people who came into the unit in 88, 89, 90, and 91 who got this bad welcoming letter that I conceded was inartfully phrased. At this point, given the Audubon judgment, we only have to, in our view, notify those folks who got the welcoming letter and provide a reimbursement to them of a very small amount of money if they choose their Beck status. We have two problems. One is the board stipulated we don't have a list of who those folks are. We didn't have a list in 1992 and 94 when we litigated this case and stipulated it. Now, what, 15 years later, we still don't know who they are. We have no list of them. And so our position is why ask us to do something, A, that we can't do, and, B, that we've largely accomplished because assume someone in 99 — excuse me, in 89 got the welcoming letter, and there are probably virtually none of these people left, and they remained in the bargaining unit to 96 or remained there to — I'm sorry, but it does — I'm having this problem also. You are saying you don't — are you saying you really don't want to comply with this order, or are you saying the order doesn't really require us to do this? I'm saying — maybe I'm saying something slightly different, which is I don't think we can comply in part, and in part I'm saying we don't. We say we've already complied. I've never argued that a large part of what is in the board's order wasn't reasonable had the board told us in 96 or 97 or 98. If the board, through its lawyer, had said, through the compliance people had said, your notice in your magazine isn't adequate, we would have done something, because we didn't want to wait and have the situation where 10 years later we're having to send notices to everybody who worked in the bargaining unit between 91 and the present. I mean, that's a huge task. It's impossible. And so at this point, our position is, because you haven't ever clarified whether that notice was adequate or not, there really isn't much else we should do or can do, because we've done it, and you just have been silent to us and won't tell us that that notice is inadequate. So all we're asking is that the requirement — Maybe we should hear from the — if it's all right, I think we should hear from the board and find out what it is that they say that you aren't doing that you're supposed to do, and then you can come back, and maybe we can get this — If I get that clarified, I may sit down and say I'm satisfied. I'll keep a record. I'll get the tape of this. Okay. Let's make a record as to what it is you're supposed to do that you haven't done. May it please the Court. My name is Stephen Goldstein, attorney for the National Labor Relations Board, which is seeking enforcement of a supplemental order. And the question before the Court is whether the Board acted in accordance with this Court's remand when it framed its supplemental order in the case. Now, when this case was before the Court the first time, the Court upheld the Board's finding that the union violated the act by notifying new employees via the welcoming letter that they were required to become full union members as a condition of employment and also by failing to notify them that they had the right to become members and that nonmembers have the beck right to object to supporting union activities that are not germane to collective bargaining. However, the Court held that the Board's order went too far and that reimbursement was due only to those employees who actually got the unlawful welcoming letter and who then turn around and object once the union gives them the correct notice. And the Board's order clearly complies with this Court's remand because the Board did exactly what this Court ordered it to do. It modified its original order to make clear that the union is only obligated to reimburse those employees who actually got the unlawful welcoming letter and who then turn around and object after the union gives them the corrected notice of the beck rights. Indeed, the union doesn't seriously dispute that the Board's order does comply with the Court's remand. Instead, what the union's argued in its brief is that an additional remand is necessary in order to guarantee that it will be able to show during the I suppose what we get off the track is that your adversary says, never mind the welcoming order. He brushes that aside, and I assume, therefore, he's capitulating any argument on whether the welcoming letter requirement now, send it to people who got the welcoming letter, is invalid. But then he turns to Excerpt 199 that requires notifying all employees of the unlawful welcoming letter. All unit employees in writing. And he says, we've already done that. So what's your response to that? Okay. Well, the two responses I have are, first, that that's beyond the scope of the remand because the Court, the Enbonne Court, only remanded the case to the Board for the purpose of modifying the reimbursement remedy. It never remanded the case to the Board for the purpose of modifying any other provision of the Board's order. But in any event, the Board's, during the compliance phase, the union is going to be able to put on ---- Time out. This is not part of the reimbursement that he is citing, right? Correct. Correct. Was that raised the first time it came up to us? It's very – it's – I cannot honestly answer that question. I find it very hard to understand their initial briefs. It strikes me that the posture of the case, as I saw it, was we were taking a look at the modification language that requires notice to go to those people who received the welcoming letter. That was the modification that our court asked to have done, and that's what was done. This seems to be a different argument that requires, as it's argued to us, notification of all employees. And my question was, was that raised the first time? If it wasn't raised then, it was waived. What is your response to the argument that now they have to go back and notify all employees whether they received the welcoming letter or not, which strikes me as rather strange because it's just contrary to what we sent it back for? Well, I agree. I think it has been. I mean, I think whether they raised it initially to either the panel opinion or the bond court, regardless of whether they raised it or not, the court never remanded it to the case, never remanded it, excuse me, to the board for the purpose of modifying paragraph 2A. 2A on page 199 of their excerpts is from the board's original decision in this case, the decision that was reviewed by the panel and the bond court. So it's identical. I don't think it's fair game now for them to challenge it. But in any event ---- So 2A is the one that we actually asked to have limited. Did not ask to have limited. Pardon me? Excuse me. 2A is something that the end bond court did not ask to have limited. What about the panel? The panel didn't either. The panel's opinion says the board's order goes too far. Reimbursement is due only to those employees who actually got the unlawful welcoming letter. So this deals with the reimbursement rather than the notice. I don't know how you define this. The appeal today goes to the reimbursement. Not to the notice. Okay. Not to the notice. But in any event, if the union during compliance can show that they have notified all bargaining unit employees of their General Motors and BEC rights, the board's not going to ask them to do it all over again. But the union assumes all these facts not in evidence. It says today that it has already mailed out a corrected notice to employees of their BEC and General Motors rights. But first of all, that's not part of the record. It wasn't introduced at the administrative hearing before the board. After this court remanded the case to the board, the board invited the parties to submit statements of position. The union submitted a statement of position. It never attached to the statement of position to the board the alleged corrected notice it's been sent out. It claims it's been sent out. The union also, excuse me, after the board issued its supplemental decision and order, the union filed a motion for reconsideration to the board. The union never attached to its motion for reconsideration the alleged corrected notice that it claims has been sent out. In addition, it's important to remember here that the welcoming letter that it sent out that was unlawful, that counsel concedes was unlawful, it mailed that out to the unit employees. It was a stand-alone document. The corrected notice that it claims it subsequently sent out was not a stand-alone document. It included it as part of a general interest publication. And the law is clear that when a union purports to satisfy its notice obligations by including the BEC notice within a general interest publication, the board and the courts not only look to what's said in the notice, but they also look to who is it sent to. Was it sent to everyone in the unit that's obligated to pay dues, or was it just sent to bargaining, or was it just sent to union members? Today, before this court, counsel says it was sent to union members. Well, that's obviously not good enough. It has to be sent to everyone in the bargaining unit because a union security clause requires everyone in the unit to pay dues and fees, not just union members. Well, you know what I'm not understanding because this case keeps, we keep seeing it seriatim. What I'm not understanding is what is that class now? I'm having trouble relating where we are now to where we were then. Who are the people that you are saying that you want the order enforced so that they mail the notice information to? Well, with respect to the reimbursement portion, consistent with this court's remand, the union has got to mail a corrected notice to every single person who got the unlawful welcoming letter. And if upon... It was in 2002 for the welcoming letter that was in 1988. It was originally sent out in 1988. There's no end date within the record. The stipulation was it was sent out beginning in 1988 and continued thereafter until I think the stipulation is word until at least July 11, 1999. There's no end date. So it's supposed to find all those people. Excuse me? So it has to find all those people and mail them. Is that the problem here? I'm sorry. Is that what? It has to find all those people and make this mailing. Yes. And the union says today that that's impossible. In fact, it points out that it stipulated that it doesn't have any records showing who got the welcoming letter. But the mere fact that it stipulated that it doesn't have records showing who got the welcoming letter certainly doesn't establish that it won't be able to figure out who got the welcoming letter. After all, it also stipulated that it doesn't have records showing when it ceased sending the welcoming letter. But if you look at page 19 of its brief to this court, you'll see that the union also says that in compliance it'll put on testimony showing when it ceased sending the welcoming letter. And there's all sorts of ways the union can figure out who got the welcoming letter. The collective bargaining agreements in this case required the union not just to send the introductory letter to the employees, but also to send copies of those letters to the employers. The union could ask or subpoena the employers for copies of the welcoming letters. That's one way to figure it out. The union could also examine its membership roles for the period in question and simply ask the members whether they got the welcoming letter. The union also could examine its fringe benefit reports for the period in question and ask the people that worked in the unit during the relevant time period whether they got the welcoming letter. You know, the frustrating thing here is that the older this gets, the longer it drags out, the harder these orders, remedial orders get to comply with until the whole thing becomes a kind of a game that has no reality anymore. So what's, in your view, what's the fastest way to get this resolved now? Because I'm frustrated with. Well, unfortunately delay to some extent is built into the statute. The statute was considered so revolutionary when it was passed in 1935 that Congress deliberately did not make board orders self-enforcing. And so, uh, if the respond, if the alleged wrongdoer refuses to comply, he's entitled to tell the board, you know, go to hell and then the board has to file an application for enforcement. Um, in addition, uh, the board has consistently, uh, determined the amounts to be due as part of a two step process. The first step is to determine whether the underlying unfair labor practice finding was valid. If that's upheld, then it goes to a second stage of compliance proceeding to figure out what exactly are the amounts due. And the, and the reason for that is, is as the Supreme Court has indicated, is that it would be a waste of agency resources to figure out the amounts due if the underlying unfair labor practice weren't held. So to some extent, even assuming everybody's acting in good faith, delay is built in. The quickest way to get the matter, bring the matter to a head is to enforce, you know, to enforce the supplemental decision in order. And which is clearly consistent with the court's remand. Um, and then it'll go to a compliance stage and the union is free to put on evidence showing, you know, that it's already provided corrected notice. But it certainly hasn't been, the board certainly hasn't found that it's provided corrected notice to date. Now at the compliance stage, who's at the table? Well, what happens is, is that the, uh, compliance, uh, the compliance officer for the region, which is an agent of the general council, says, this is what you have to do to comply. And the union's free to say, you know, we've already done it or we don't agree. And if they can't reach an agreement, an informal agreement, then it goes before, uh, before an administrative law judge. And if the union isn't happy with his or her disposition, uh, the union can appeal to the board. And if the union isn't happy, it'll be back up here. But I mean, but certainly, I mean, the court has already upheld, uh, the merits of the board's unfair labor practice. And to deny enforcement now on the basis of the delay would merely serve to continue. Does it make a lot of sense? No, it does not. Um, just one very quick final thing. Um, we've already dealt with the impossibility argument that it's allegedly impossible for it to comply. The only other thing I wanted to address was their argument today that, uh, the court should not enforce the board's, uh, requirement that it, um, mail copies of the board's remedial notice. The remedial notice of the board is different from the Beck notice. The union committed a whole slew of other unfair labor practices in this case, including threatening Mr. Hilton and Nozak that it would get them fired if they didn't pay a full union dues. And, um, the board's order requiring the union to mail copies of the board's remedial notice is not properly before the court today, because, again, it's beyond the scope of the remand. The court never remanded the case to the board for the purpose of modifying the, uh, the mailing requirement. In any event, it clearly serves the policies of the act to, uh, inform employees that, uh, that the board stands ready to protect, uh, their rights. And the union can hardly claim that the requirement's onerous, because the union did not post the welcoming letter in its union hall and at the employer's facilities. Instead, what it did was it mailed copies of the unlawful welcoming letters to the employees. So it obviously didn't think that mere posting would be sufficient. And so the board's, uh, requirement that the union mail copies of the board's remedial notice is entitled to the same circulation for the same reasons. In conclusion, the board requested the court enforce the board's supplemental order. Thank you. I think this has straightened out a good part of this. Your Honor, Mr. Goldstein is correct. This goes back to the compliance officer to look at what we've done and say, did you comply or not? We've asked the compliance officer for the last ten years, did we comply with our notice? They won't tell us and haven't told us. That's frustrating for us, because now we're at risk that some new compliance officer, some new general counsel will say, you know, that notice we've had in our, that you've told us about every year for the last ten years, now we don't think it's adequate. You know what bothers, what bothers me about this case, and labor law is a great mystery, what bothers me about this case is it was brought up here on, on an issue, and that issue was the welcoming letter. We looked at that issue and we said it was too broad. All we did was send it back for that change. The change was made. It comes back up to us. We find out the change was made. We compare the original order with a revised order. They complied with our remand. It seems to me that's the only issue before us. I don't know how we get to other issues that could have been raised earlier, which were either not raised or we didn't consider. Why do we have to go further than the welcoming letter as far as what is before us now as regards to any other issue that will be determined during compliance proceedings? Because these issues were raised on remand. When the board took the Ninth Circuit en banc decision, it then accepted the remand and asked the parties to state their positions about further proceedings and our position as to what was appropriate, given the status of the case at that time. Our remand was very limited. Our remand only had to do with the welcoming letter and what the union has to do in relation to the welcoming letter. We send back to the board, and I've got the language of the two right in front of me. It seems to me the board did exactly what we asked them to do in a rational and reasonable way. Why should we not just affirm they've done what we told them to do? All those other issues could have been brought earlier. We picked this one and sent it back. The board sends it to us, and we say they did right. Why wouldn't anything else be outside of the purview of what's really before us? Because the board's order on remand invited the parties, all of us, to state what was our position as to what to do next, and opened up the barn door in that sense. Not totally, but opened up to say, given the fact that we're now, what, 15 years later, what do we do? And so we respond. I understand the time problem, but we also have rules, and we also have how we proceed with issues. There's a simple remand. They accept the amend, remand. It comes back to us. We rule on the remand. You haven't argued that the remand wasn't fulfilled properly or reasonably by the board. You want to now open up to other things. Why would that? That's not within our purview, as I see it. Tell me why I'm wrong. There's a second, also, technical, I mean, procedural reason. The judgment that this Court entered from the en banc decision lacked any requirement that we provide notice. That is, for some reason, when the board submitted the judgment to this Court, it left out that part of the judgment that would have required us to provide the notice. It was there for the other parties, but not for us. So, in that sense, it's beyond this Court. I think that counsel's concession takes care of part of it. He says that, yeah, okay, he agrees that we can show that we sent an appropriate back General Motors notice, and if we've done it, as I understand his concession, we don't have to send another notice under 2A. That takes care of part of my problem. It doesn't take care of my problem that I think we've already done it, but I'm willing, if the Court says, enforce the order, to take his concession so I can go back to the board and say, okay, we've already done it. We'll argue about that before the board. The other part that I don't think, I'm not sure that, I think his statement is contrary to where our position is, but 2H seems to say that we have to send the board's notice to everybody in the bargaining unit today, or whenever this is enforced. In other words, you know, I concede that there were people back there in 88 and 89 and 90 who got the wrong impression about what they were supposed to do, and the threats to no second hilt were not argued about. They were unlawful, given the status of the law then and now. And we don't have a problem mailing this notice, the board's notice, to people who were in the bargaining unit then. Our problem is, why should we mail it to 10,000 people who know nothing about events in 1988 when we have religiously, and in compliance with the law, given them their back General Motors notice since 1996? We don't have to. See, the problem, the problem is whether you're in the church, but the question is whether you're in the right pew. This is a factual determination about which we have no ability to determine. We're an appellate court, whether you should and to what extent and what you can do. And so that was my question of why isn't everything outside of the specific remand and ruling on whether or not the board is right, why isn't that more properly in a compliance proceedings where they can take facts and do the determination? Because even the board concedes, and my last point is, even the board concedes that in a compliance proceeding you can bring to the board new circumstances that would then make the remedy either impossible or unnecessary. And my point is that that's exactly what we're trying to show here 20 years later. Okay. Thank you. I see your point. Thank you. Okay. Thank you. The matter just argued is submitted for decision. That concludes the Court's calendar for this morning, this afternoon, morning. And the Court stands adjourned. All rise. The Court is adjourned. The Court is adjourned.
judges: Wallace, Schroeder, Clifton